PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

EDWIN ALFREDO HERNANDEZ-    )
CINE,

    )    CASE NO.  4:26-cv-421

          Petitioner,    )

    )

          v.    )    JUDGE BENITA Y. PEARSON

    )

ED VOORHIES, *et al.*,    )

    )    **MEMORANDUM OF OPINNION**

          Respondents.    )    **AND ORDER**

    )    [Regarding ECF No. 1]

Pending before the Court is Edwin Alfredo Herndandez-Cine's Petition for Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2241.  ECF No. 1.  The matter is fully briefed.  Resp.

Return of Writ, ECF No. 5; Pet. Response Br., ECF No. 6.  Being duly advised, having reviewed

the parties' briefs and the applicable law, the Court grants the petition (ECF No. 1) for the

reasons set forth herein.

## I.    BACKGROUND

Petitioner is a 24-year-old Salvadorian national.  He entered the United States in 2015,

crossing the international border from Mexico into Texas when he was 15 years old.  ECF No. 1,

PP 2, 49; ECF No. 5-5.  On December 8, 2016, he was apprehended by the Department of

Homeland Security ("DHS") Customs and Border Protection ("CBP") at the Eagle Pass

International Bridge in Texas.  ECF No. 1; ECF No. 5-1.  He was processed as an

unaccompanied alien child, placed in removal proceedings under 8 U.S.C. § 1229a, and released

into his father's custody.  ECF No. 5-1; ECF No. 5-9.  The removal proceedings were dismissed

(4:26CV421)

for lack of prosecution in September 2020.  ECF No. 5-2.  Since his release in 2016, Petitioner

has lived and worked in Trenton, New Jersey and has no criminal arrests or convictions.  ECF

No. 1, ⁋ 51.

On November 23, 2025, Petitioner was stopped by border patrol while driving in Niagara

Falls, New York.  On December 5, 2025, he received a Notice to Appear before the Executive

Office for Immigration Review ("EOIR").  ECF No. 5 at PageID ##: 36–37.  Petitioner has been

in Immigration and Customs Enforcement ("ICE") custody since December 2025, detained at the

Northeast Ohio Correctional Center ("NEOCC"), without the opportunity to post bond or be

released on other conditions.  ECF No. 1, ⁋ 52.

DHS placed Petitioner in regular removal proceedings under 8 U.S.C. § 1229a, charging

him with: (1) being present in the United States without being admitted or paroled in violation of

8 U.S.C. § 1182(a)(6)(A)(i);[1] and (2) admission to the United States without proper

documentation in violation of 8 U.S.C. § 1182(a)(7)(A)(i)(I).[2]  ECF No. 5-4.  In a footnote

within the Return of Writ, Respondents acknowledge there is no evidence supporting the first

charge, which Immigration and Customs Enforcement ("ICE") intends to correct "should this

case be before an Immigration Judge in the future."  ECF No. 5 at PageID #: 37, n. 3.

---

[1] "An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."

[2] "[A]ny immigrant at the time of application for admission . . . who is not in possession of valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document or identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title."

(4:26CV421)

## II.    DISCUSSION

### A.  Exhaustion of Administrative Remedies

Respondents argue that Petitioner has failed to exhaust administrative remedies before the EOIR and Board of Immigration Appeals ("BIA"), and the Court should not waive that requirement.[3]  ECF No. 5 at PageID ##: 38–39.  The Court is unpersuaded.

There is no statutory requirement that Petitioner must administratively exhaust his claims, rendering exhaustion prudential and within the Court's sound discretion.  *See, e.g., Echavaria Morales v. Noem*, No. 3:25-cv-2691, 2026 WL 100583, at *2 (N.D. Ohio Jan. 14, 2026) (Pearson, J.) (citing *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)).  Although "[t]he Sixth Circuit has not formally adopted a standard for determining when prudential exhaustion applies," *see Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 778 (E.D. Mich. 2025), appeal pending No. 25-1965 (6th Cir.), district courts in this circuit have utilized the Ninth Circuit's three-factor test, *see United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983), requiring exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and

---

[3] Petitioner's response does not address Respondents' exhaustion argument, instead arguing that that 8 U.S.C. § 1252 does not strip the Court's jurisdiction to decide detention issues.  ECF No. 6 at PageID ##: 84–85.  Although jurisdiction is uncontested, the Court affirms—consist with its prior holdings and those of other district courts in the Sixth Circuit and across the country—that § 1252 does not bar jurisdiction to resolve Petitioner's detention-based claims, including his Fifth Amendment due process claims.  *See, e.g., E.V. v. Raycraft*, No. 4:25-cv-2069, 2025 WL 3122837, at *5–7 (N.D. Ohio Nov. 7, 2025) (Pearson, J.); *Singh v. Stevens*, --- F. Supp. 3d ---, No. 3:26-cv-133, 2026 WL 456489, at *2–3 (N.D. Ohio Feb. 18, 2026) (Pearson, J.).

(4:26CV421)

> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Echavaria Morales*, 2026 WL 100583, at \*2 (collecting cases).  All three factors weigh in Petitioner's favor.  First, his habeas petition raises purely legal questions that do not require a developed administrative record.  Second, his habeas petition includes, *inter alia*, a due process claim rendering the administrative scheme (*i.e.* appeal to the BIA) futile.  Finally, administrative review is unlikely to change Respondents' position that § 1225(b)(2)(A) applies in this case.  As such, requiring Petitioner to go through the administrative process would be fruitless and a waste of time.

Even if these factors weighed in favor of exhaustion, the Court may still waive that requirement "when the interests of the individual weigh heavily against requiring administrative exhaustion, or exhaustion would be futile and unable to afford the petitioner the relief he seeks," or when "delay means hardship."  *Lopez-Campos*, 797 F. Supp. 3d. at 778–79.

In this case, exhaustion would be futile.  "Waiver based on futility is appropriate when an administrative agency 'has predetermined the disputed issue' by having a 'clearly stated position' that the petitioner is not eligible for the relief sought."  *Contreras-Lomeli v. Raycraft, No. 2:25-cv-12826, 2025 WL 2976739, at \*4 (E.D. Mich. Oct. 21, 2025)* (quoting *Cooper v. Zych, No. 09-CV-11620, 2009 WL 2711957, at \*2 (E.D. Mich. Aug. 25, 2009)*); *see Shawnee Coal Co. v. Andrus, 661 F.2d 1083, 1093 (6th Cir. 1981)* (recognizing that administrative exhaustion may be excused if it would be futile).  Respondents' position regarding mandatory detention and bond hearings under § 1225 and § 1226 is articulated in two recent BIA decisions: *Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025)* (holding that an immigration judge "lack[s] authority to hear bond requests or to grant bond to aliens who are present in the United States without admission") and *Matter of Q. Li, 29 I&N Dec. 66, 69 (BIA 2025)* (holding that

4

(4:26CV421)

"an applicant for admission who is arrested and detained without a warrant while arriving in the United States . . . is ineligible for any subsequent release on bond under . . . 8 U.S.C. § 1226(a).").  Both BIA opinions are binding on DHS and immigration courts, and which conclusively reject Petitioner's arguments in this case.  BIA denial of Petitioner's bond hearing appeal is predetermined, rendering exhaustion futile.

Second, Petitioner advances constitutional claims, on which the BIA lacks authority. *Contreras-Cervantes v. Raycraft*, No. 2:25-cv-13073, 2025 WL 2952796, at *6 (E.D. Mich. Oct. 17, 2025) (citing *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006); *accord Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006) ("Exhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures.") (citation omitted)).  Requiring Petitioner to wait for the BIA to review his detention appeal ignores his requested relief: release from unlawful detention.  Waiting on the months-long BIA appeal process, *see Lopez-Campos*, 797 F. Supp. 3d at 779, "'would result in the very harm the bond hearing was designed to prevent,' that is, prolonged detention without due process." *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (quoting *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 237 (W.D.N.Y. 2019)).

Finally, requiring Petitioner to remain in custody while exhausting administrative remedies would subject him to undue hardship.  *See Lopez-Campos*, 797 F. Supp. 3d at 779 ("When the liberty of a person is at stake, every day that passes is a critical one."); *Contreras-Lomeli*, 2025 WL 2976739, at * 3 ("Forcing Petitioner to endure six months or more of potentially unlawful detention would thus cause him great hardship.").

Accordingly, the exhaustion requirement is waived.

5

(4:26CV421)

### B. Mandatory Detention

At issue in this case is whether Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) or the discretionary detention under 8 U.S.C. § 1226(a). Petitioner has the better argument; § 1226(a) applies.

The analysis begins with the statutory text. Section 1225(b) provides specific rules for noncitizens seeking entry into the United States. Section 1225(b)(1) provides for expedited removal proceedings[4] of: (1) "arriving aliens"; and (2) noncitizens who are (a) "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," *and* (b) who have not been continuously present in the country for two years following the inadmissibility determination. *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (citations omitted); 8 U.S.C. § 1225(b)(1)(A). Section 1225(b)(2) more broadly applies to "applicants for admission" who are "seeking admission" under regular removal proceedings (8 U.S.C. § 1229a) but "not clearly and beyond a doubt entitled to be admitted." *Chavez v. Director of Detroit Field Office*, No. 4:25-cv-2061, 2025 WL 3187080, at *3 (N.D. Ohio Nov. 14, 2025) (Lioi, C.J.) (citing 8 U.S.C. § 1225(b)(2)). Limited exceptions from mandatory detention under § 1225(b)(2)(A) include "urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see Echavarria Morales*, 2026 WL 100583, at *3 (citing *Barrera v. Tindall*, No. 3:25-cv-541, 2025 WL 2690565, at *2 (W.D. Ky. Sept. 19, 2025)); *Jennings*, 583 U.S. at 300

---

[4] Unlike regular removal proceedings, during which a noncitizen may present evidence and argument before an immigration judge and concludes after several months, expedited removal proceedings are a "streamlined" removal process during which an immigration officer, rather than an immigration judge, asks a series of questions to determine the individual's identity, alienage, and inadmissibility and can conclude in a matter of days, if not hours. *See Make the Road New York v. Noem*, 805 F. Supp. 3d 139, 148–49 (D.D.C. 2025); 8 C.F.R. § 235.3(b)(2)(i).

(4:26CV421)

("That express exception to detention implies that there are no *other* circumstances under which aliens detained under § 1225(b) may be released.").

Conversely, § 1226 serves as a catchall applicable to noncitizens already in the country pending the outcome of removal proceedings. *Jennings*, 583 U.S. at 288. The statute provides the Attorney General (who has delegated her authority to the DHS Secretary) with discretion to arrest and detain noncitizens, save for those individuals that fall under the statutory exceptions set forth in § 1226(c). *Id*. at 288–89. Detention of noncitizens subject to removal under § 1226 is discretionary and, therefore, such individuals are entitled to a bond hearing. *Id*.

The Court has previously joined the growing national consensus rejecting DHS's interpretation that § 1225(b)(2) applies to all noncitizens not admitted or paroled into the country, holding that position ignores and vitiates other detention schemes within the Immigration and Nationality Act (*e.g.*, § 1226(c), which excepts criminal noncitizens from the discretionary detention under § 1226(a)). *See, e.g., Echavaria Morales*, 2026 WL 100583, at *3–5; *Chavez*, 2025 WL 3187080, at *7, n. 6 (collecting cases); *see also Guzman Cardenas v. Almodovar*, No. 25-CV-9169 (JMF), 2025 WL 3215573, at *2 (S.D.N.Y. Nov. 18, 2025) (citing *Chavez, supra*). Unless future binding case law instructs otherwise, the Court continues to apply a statutory analysis consistent with its prior holdings concerning § 1225(b)'s applicability to *all* noncitizens without legal status to remain in the United States.

Respondents argue that Petitioner is properly subject to expedited removal and mandatory detention under § 1225(b)(1) because he is an "arriving alien" who applied for admission "at the Eagle Pass International Bridge pedestrian walkway." ECF No. 5 at PageID #: 41. Respondents' own documents contradict this claim, indicating that Petitioner was recently

7

(4:26CV421)

placed in regular removal proceedings under § 1229a, not expedited removal proceedings under § 1225(b)(1). ECF No. 5-4.

In any event, Petitioner cannot be lawfully subjected to expedited removal because he is not an "arriving alien" and "has been physically present in the United States continuously" for nearly a decade. *See* 8 U.S.C. § 1225(b)(1)(A). Although he was likely an "arriving alien" when first apprehended at the border in 2016 (ECF No. 5-1), he was released from custody and has lived in New Jersey since then without incident. ECF No. 5-9. At that time, DHS placed Petitioner in regular removal proceedings under § 1229a, which were dismissed in September 2020 for failure to prosecute. ECF No. 5-1; ECF No. 5-2. It is nonsensical to now classify Petitioner as an "arriving alien" subject to expedited removal ten years after permitting him to live and work in the country, especially after previously subjecting him to regular removal proceedings. *See E.V.*, 2025 WL 3122837, at *7 (citing *Coalition for Humane Immigrant Rights v. Noem*, 805 F. Supp. 3d 48, 89 (D.D.C. 2025)) (holding that the time to subject noncitizens to expedited removal is when they present themselves to an immigration officer for inspection at a port of entry, not years later after having been released into the interior).

Furthermore, when completing the Notice to Appear in 2025, ICE checked the "alien *present* in the United States who has not been admitted or paroled" box, not the "arriving alien" box. ECF No. 5-4 (emphasis added). This further supports the conclusion that Petitioner is not now an "arriving alien" and is instead subject to discretionary detention under § 1226(a). *See Lopez-Campos*, 797 F. Supp. 3d at 782 (holding DHS is bound by its initial determination in a Notice to Appear form regarding whether a noncitizen is classified as an "arriving alien" or "present" without being admitted or paroled into the country); *Edahi v. Lewis*, No. 4:25-cv-129-RGJ, 2025 WL 3466682, at *8 (W.D. Ky. Nov. 27, 2025) (same); *Pacheco-Acosta v. Olson*, ---

8

(4:26CV421)

F. Supp. 3d ---, No. 25-186-DLB, 2025 WL 3542128, at *5 (E.D. Ky. Dec. 10, 2025).

Therefore, Petitioner's detention is not governed by § 1225(b)(1) and he cannot be subject to expedited removal proceedings.

Section 1225(b)(2) does not govern Petitioner's detention for similar reasons. While Petitioner may be an "applicant for admission," that does not mean he is "seeking admission" such that § 1225(b)(2)(A)'s mandatory detention requirement is triggered. "[A]pplicant for admission" is a term of art defined by the statute, but "seeking admission" is not. *See Ruiz-Lara v. Raycraft*, No. 1:26-cv-499, 2026 WL 642988, at *5 (N.D. Ohio Mar. 9, 2026) (Gaughan, J.) (citing *Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018)) ("[T]o equate a defined term of art with the everyday meaning of 'seeking admission' because the terms share a word misses the mark."); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 511 (5th Cir. 2026) (Douglas, J. dissenting) (citing *Feliciano v. Dep't of Transp.*, 605 U.S. 38, 45 (2025))("'Congress may . . . define a word or phrase [like 'admission'] in a specialized way' but 'absent such [a definition], those whose lives are governed by law are entitled to rely on its ordinary meaning, not left to speculate about hidden messages.'"). The term "seeking" implies action and requires more than mere presence in the United States. *Lopez-Campos*, 797 F. Supp. 3d at 781; *Lemus v. Lynch*, No. 4:26-cv-203, 2026 WL 496731, at *11 (N.D. Ohio Feb. 23, 2026) (Lioi, C.J.) *Rodriguez v. Greene*, No. 4:26-cv-333, 2026 WL 574961, at *10 (N.D. Ohio Mar. 2, 2026) (Polster, J.). "[I]t would strain the words of the statute to say that one who has been in the United States since [2015] is seeking to enter it." *Chavez*, 2025 WL 3187080, at *4 (collecting cases). When he was arrested in December 2025, Petitioner was "already in the county" for nearly a decade, *see Jennings*, 583 U.S. at 289, and, therefore, falls squarely within § 1226(a)'s default detention rule. *Lopez v. Raycraft*, No. 4:25cv2449, 2025 WL 3280344, at *5 (N.D. Ohio Nov. 25, 2025)

9

(4:26CV421)

(Pearson, J.); *Chavez*, 2025 WL 3187080, at *4; *Lopez-Campos*, 797 F. Supp. 3d at 784. Because Petitioner is not subject to mandatory detention under § 1225(b)(2)(A), he is entitled to a bond hearing to determine whether he poses a flight risk or danger to the community.

### C.  Due Process

Petitioner's procedural due process claims are assessed in two steps: first, whether he has a protected liberty interest under the Fifth Amendment Due Process Clause; and second, what procedures are necessary to ensure deprivation of his interests are constitutional.  *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

### 1.  Petitioner's Liberty Interest

Under the Fifth Amendment, the federal government is prohibited from depriving any person of liberty without due process of law.  U.S. Const. amend. V.  Freedom "from government custody, detention, or other forms of physical restraint . . . lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).  That protection extends to noncitizens subject to removal proceedings.  *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025).

Respondents retort that Petitioner's detention pending the conclusion of his removal proceedings is constitutional and consistent with the Supreme Court's holding in *Demore v. Kim*, 538 U.S. 510 (2003).  But as other courts have recognized, *Demore* is narrower than claimed. *See, e.g., Azalyar v. Raycraft*, --- F. Supp. 3d. ---, No. 1:25-cv-916, 2026 WL 30741, at *3 (S.D. Ohio Jan. 2, 2026); *Rodriguez v. Raycraft*, No. 4:26-cv-302, 2026 WL 656956, at *8 (N.D. Ohio Mar. 9, 2026) (Polster, J.).  In *Demore*, the Supreme Court held that Congress was "justifiably concerned that deportable *criminal* aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers," and as such, it is constitutionally

(4:26CV421)

permissible to detain such individuals "for the brief period necessary for their removal proceedings" under § 1226(c).[5] *Demore*, 538 U.S. at 513 (emphasis added). Here, Petitioner has no criminal arrests or convictions and, thus, § 1226(c) is inapplicable.

As discussed, Petitioner has been living and working in the United States since he was released from DHS custody in 2016 and has established a protected liberty interest in remaining free from detention. *See, e.g., Rosado v. Figueroa*, No. CV 25-02157, 2025 WL 2337099, at *12 (D. Ariz. Aug. 11, 2025) ("Although ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody they have a protected liberty interest in remaining out of custody.").

### 2. The Mathews *Analysis*

Having found a protected liberty interest, the Court applies the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to determine what process is necessary to ensure any deprivation of that liberty interest accords with the Constitution. *Escobar-Ruiz v. Raycraft*, No. 1:25-cv-1232, 2025 WL 3039255 at *6 (W.D. Mich. Oct. 31, 2025) (citing *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020)). Under that test, the Court must consider three factors: (1) the private interests that will be affected by the official action; (2) the risk of erroneous deprivation of such interests; and (3) the government's interest, including fiscal and

---

[5] The exception in § 1226(c) provides that a noncitizen who is inadmissible and "is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person" is subject to mandatory detention.

11

(4:26CV421)

administrative burdens that additional procedures may entail.  *Mathews*, 424 U.S. at 335;

*Ballestros v. Noem*, No. 3:25-cv-594, 2025 WL 2880831, at \*4 (W.D. Ky. Oct. 9, 2025).

Here, all three factors weigh in Petitioner's favor.  First, freedom from detention is one of

the "most elemental of liberty interests."  *Ballestros*, 2025 WL 2880831, at \*4 (quoting *Hamdi v.*

*Rumsfeld*, 542 U.S. 507, 529 (2004)).  Petitioner has been living in the country for almost ten

years and has created a strong interest in his continued freedom from detention.  Second, an

individualized bond hearing to ensures that an immigration judge can assess whether a

noncitizen poses a flight risk or a danger to the community, thereby mitigating the erroneous

deprivation of noncitizen's liberty interests.  *Escobar-Ruiz*, 2025 WL 3039255, at \*7 (citing

*Lopez-Campos*, 797 F. Supp. 3d at 785); *E.V.*, 2025 WL 3122837, at \*12.

Finally, although the Court recognizes Respondents' interests in enforcing immigration

policies, including ensuring noncitizens appear at removal proceedings, that interest does not

justify detaining Petitioner without a bond hearing.  *See E.V.*, 2025 WL 3122837, at \*12.

Indeed, Respondents are squandering resources in detaining Petitioner, who was previously

released from and remained out of DHS custody since 2016 without incident.

All three *Mathews* factors weigh in Petitioner's favor, rendering his continued detention

without an individualized assessment regarding his flight risk or danger to the community

violative of his Fifth Amendment due process rights.

### D.  Scope of Relief

Having concluded that Petitioner's detention without a bond hearing violates his

procedural due process rights, the Court must determine the appropriate remedy.  Petitioner

requests immediate release from custody.  ECF No. 1.  In lieu of that remedy, district courts

addressing similar issues agree that a more appropriate remedy is a bond hearing before an

12

(4:26CV421)

immigration judge.  *See, e.g., E.V.*, 2025 WL 3122837, at *12 (collecting cases) ("When the case concerns procedural due process violations, the appropriate remedy is to afford the proper procedure.").

During that hearing, the burden is on Respondents to show by clear and convincing evidence that a noncitizen should remain in detention, *Hernandez-Ferndandez v. Lyons*, 5:25-cv-00773-JKP, 2025 WL 2976923, at *11 (W.D. Tex. Oct. 21, 2025) (collecting cases); *E.V.*, 2025 WL 3122837, at *12; *Rodriguez*, 2026 WL 574961, at *13, because the Petitioner's "potential loss of liberty is so severe . . . he should not have to share the risk of error equally." *Hernandez-Ferndandez*, 2025 WL 2976923, at *10 (quoting *German Santos v. Warden Pike Cty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020)).  Accordingly, Respondents shall afford Petitioner a bond hearing before an immigration judge, during which, Respondents must demonstrate by clear and convincing evidence that Petitioner should remain in custody.  If Respondents continue to disclaim authority to conduct such individualized assessments in accordance with this Order, then Petitioner must be immediately released.

## III.    CONCLUSION

For the reasons discussed herein, the Petition for habeas relief (ECF No. 1) is granted.  It is hereby ordered that Respondents shall:

1.  Maintain Petitioners' removal under the regular removal process pursuant to 8 U.S.C. § 1229a, not expedited removal proceedings under § 1225(b)(1); and

2.  Within seven (7) days of this Order, afford Petitioner an individualized bond hearing pursuant to 8 U.S.C. § 1226(a) before an immigration judge, during which Respondents shall bear the burden of showing by clear and convincing evidence that

13

(4:26CV421)

Petitioner poses a flight risk or a danger to the community such that his continued detention is justified; or

3. Release Petitioner from custody; and

4. File a status report within 48 hours of the bond hearing or Petitioner's release, but no later than ten (10) days from the date of this Order, certifying compliance therewith. The report shall inform the Court whether a bond hearing was held.  If Petitioner has not been released from custody, Respondents shall inform the Court, in detail, of the reasons for his continued detention, including any reasoning of an immigration judge.

IT IS SO ORDERED.

April 10, 2026
Date

/s/ Benita Y. Pearson
Benita Y. Pearson
United States District Judge

14